884 P.2d 1236 (1994)
ANESTHESIOLOGISTS ASSOCIATES OF OGDEN, a Utah professional corporation, Plaintiff and Respondent,
v.
ST. BENEDICT'S HOSPITAL, a Utah nonprofit corporation, St. Benedict's Health System, a Utah nonprofit corporation, and Does 1 through 50, Defendants and Petitioners.
No. 930282.
Supreme Court of Utah.
November 9, 1994.
D. Gary Christian, Shawn McGarry, Kirk Gibbs, Salt Lake City, for plaintiff.
Stewart M. Hanson, Charles P. Sampson, Paul M. Simmons, Salt Lake City, for defendants.

*1237 ON CERTIORARI TO THE UTAH COURT OF APPEALS
ZIMMERMAN, Chief Justice:
St. Benedict's Hospital and St. Benedict's Health Systems ("the Hospital") petitioned this court for a writ of certiorari to review the court of appeals' assessment of damages in Anesthesiologists Associates of Ogden v. St. Benedict's Hospital, 852 P.2d 1030 (Utah Ct.App.), cert. granted, 860 P.2d 943 (Utah 1993). The court of appeals held that
for purposes of determining a professional corporation's damages in cases like the instant one, compensation that would have been paid to the corporation's principals had a contract been performed should be considered as income in calculating lost profit, not as an expense of the corporation that was avoided by a contract's breach.
Id. at 1039. We disagree with the court of appeals' assessment of the law of damages and vacate its judgment. The trial court's award of damages to the corporation for the loss of anticipated profits is reinstated.
Anesthesiologists Associates of Ogden ("Associates") incorporated in 1968 as a professional corporation.[1] The corporation's shares at all times relevant to this action were held by six anesthesiologists who were also Associates' principal employees. Id. at 1033-34. Associates had entered into two separate but concurrent agreements with the Hospital by which it agreed to provide the Hospital with general surgical anesthesia as well as obstetrical anesthesia services. Id. When Associates notified the Hospital in July of 1985 that it wished to terminate the obstetrical agreement, the Hospital terminated both the obstetrical and the general surgical agreements. Id. at 1034. In March of 1988, Associates brought this action for breach of the surgical contract; none of Associates' shareholders were joined as parties.
The trial was bifurcated into liability and damages phases, and both phases were tried to the bench. In the first phase, the trial court found that the Hospital had breached its contract with Associates. In the second phase, however, the court limited Associates' award of damages to $14,883. It did so despite the fact that Associates claimed $1,030,618 in lost profits under the contract, plus $361,783 in interest. The $1,030,618 claim included anticipated salaries that would have been paid out to the principal shareholders of Associates during the remaining term of the contract. According to the trial court, the $14,883 award represented the lost income of the corporation minus expenses saved. The court included as expenses saved the salaries of the anesthesiologists who were the principal shareholders of the corporation. The trial court further held that even if the doctors' salaries had not been deducted, Associates would still be limited to $14,883 in damages because the doctors had either mitigated their losses by finding employment elsewhere or failed to mitigate despite a reasonable opportunity to do so.
Associates appealed the award of damages, contending that it was an improper calculation of the corporation's lost profits. The Hospital cross-appealed on the issue of its liability for breach of contract. The court of appeals affirmed the Hospital's liability but reversed the award of damages. Id. at 1036, 1039. The court held that in calculating lost profits for a professional corporation such as Associates, in which "shareholders and employees are virtually the same persons," unpaid shareholder salaries should be included as an element of lost profits for which the breaching party is liable rather than as expenses that are saved by the breach when the corporation's performance is excused. Id. at 1039 & n. 6. The court of appeals also found that two of the six shareholder anesthesiologists had suffered actual damages as a result of the Hospital's breach and remanded for a new determination of damages based on the lost income of these physicians. Id. at 1039-41.
We granted the Hospital's petition for a writ of certiorari to determine the proper method of calculating damages incurred by a professional corporation as a result of a breach of contract. Specifically, we must determine how the law of damages should treat the anticipated salaries of professional *1238 shareholders of the corporation. Because we are reviewing only legal questions, we accord the conclusions of the court below no particular deference but review them for correctness. Grayson Roper Ltd. v. Finlinson, 782 P.2d 467, 470 (Utah 1989); City of West Jordan v. Utah State Retirement Bd., 767 P.2d 530, 532 (Utah 1988); Scharf v. BMG Corp., 700 P.2d 1068, 1070 (Utah 1985).
We begin with propositions over which the parties do not disagree. Damages awarded for breach of contract should "place the nonbreaching party in as good a position as if the contract had been performed." Alexander v. Brown, 646 P.2d 692, 695 (Utah 1982); accord Keller v. Deseret Mortuary Co., 23 Utah 2d 1, 3, 455 P.2d 197, 198 (1969). The proper measure of damages is the contract price less any expenses saved by the nonbreaching party when it was excused from its performance. Sawyers v. FMA Leasing Co., 722 P.2d 773, 774 (Utah 1986). The salaries of corporate employees are generally deducted from the damages awarded to conventional corporations. See, e.g., Ad-Vantage Tel. Directory Consultants, Inc. v. GTE Directories Corp., 849 F.2d 1336, 1351 (11th Cir.1987). This is because salaries not paid to employees are viewed as saved costs of performing the contract and therefore are not an element of the corporation's damages. The parties here disagree, however, as to how the salaries of a professional corporation's employee shareholders should be treated. Associates claims that professional corporations are unique and that their shareholder salaries represent the profits of the corporation and should be recoverable; the Hospital asserts that such salaries are corporate expenses and should not.
The Hospital argues that professionals should not be permitted to take advantage of corporate form without also accepting its disadvantages, including hornbook damages law that employee compensation must be deducted before computing lost profits. As authority for its position, the Hospital cites Southern Bell Telephone & Telegraph Co. v. Lewis H. Kaminester, M.D., P.A., 400 So.2d 804 (Fla.Dist.Ct.App.1981). Associates contends that special treatment should be granted professionals who incorporate. It relies principally on Bettius & Sanderson, P.C. v. National Union Fire Insurance Co., 839 F.2d 1009 (4th Cir.1988), in which the court concluded that salaries of professional shareholders must be considered as part of corporate profits. Id. at 1013.
The court of appeals accepted Associates' position and followed Bettius. It reasoned that professional corporations like Associates differ from traditional commercial corporations in three important respects: (i) the shareholders in a professional corporation must be licensed professionals; (ii) employees and shareholders in such corporations are one and the same; and (iii) professional corporations calculate their net profits with different goals in mind. Anesthesiologists, 852 P.2d at 1038. The court concluded that these differences make it unfair to calculate a professional corporation's damages in the same way they are calculated for ordinary business corporations. Id. at 1038-39. It held that professional corporations are analogous to partnerships and their damages should be calculated accordingly. Id. We have considered Bettius and Southern Bell and conclude that the latter represents the sounder reasoning. We find the analogy of a professional corporation to a partnership to be overdrawn and find no merit to the three differences between professional and other business corporations relied upon by the court of appeals. The first of these differences is inconsequential, and the other two are illusory. We therefore conclude that professional corporations must be treated like other corporations for purposes of calculating damages. Unpaid salaries of corporate shareholders are to be treated as saved expenses.
To explain, the first difference between professional and nonprofessional corporations identified and relied on by the court of appeals is the Utah Code requirement that all officers, directors, and shareholders of a professional corporation (except for the secretary and treasurer) be professionals licensed to provide the services for which the corporation was organized. Id. (citing Utah Code Ann. § 16-11-8). While this difference is real enough and provides a reliable means of distinguishing professional from other corporations, *1239 it suggests no reason why the former should be treated differently than the latter for purposes of assessing damages for a breach of contract. Associates has provided no justification for treating corporations differently simply because they are owned by doctors, lawyers, or other licensed professionals rather than by nonprofessionals. Furthermore, we find nothing in the statute to suggest that professional corporations should benefit from a different measure of damages than that appropriate for all other profit-making corporations. In fact, to the contrary, the statute specifically states that professional corporations "shall enjoy the powers and privileges and be subject to the duties, restrictions, and liabilities of other corporations." Utah Code Ann. § 16-11-5 (emphasis added).
The second difference between business and professional corporations relied upon by the court of appeals to justify disparate treatment of professional shareholders' salaries in lost profit calculations is that "[u]nlike a business corporation, where shareholders own stock in the organization and employees are hired and their salaries deducted as corporate expenses, employees and shareholders are largely one and the same in a professional corporation." Anesthesiologists, 852 P.2d at 1038 (citing Bettius, 839 F.2d at 1013). We find this to be a false distinction for several reasons. First, while it may be true that employees and shareholders are "one and the same" in many professional corporations, it certainly is not the case with all of them. We take notice of the fact that many law firms, for example, employ a large number of professional but nonshareholding "associates" and have relatively few shareholding "partners." Recognizing that all professional corporations do not necessarily resemble Associates, the court of appeals limited its holding to those "professional corporations in which the shareholders and employees are virtually the same persons." Id. at 1039 n. 6. However, the court of appeals offers no guidelines for determining what ratio of shareholders to employees a professional corporation must maintain for shareholders and employees to be considered "virtually the same persons."
Furthermore, and perhaps more critical, the presumed identity of shareholders and employees relied upon by the court of appeals to justify special treatment for professional corporations is by no means unique to professional corporations. Again, we take cognizance of the common fact that many corporations owned by nonprofessionals are also closely held or have a close identity between employees and shareholders. The court of appeals' opinion fails to explain why any distinction should be made between professional corporations "in which the shareholders and employees are virtually the same persons" and the many closely held business corporations that fit the same description. Absent such an explanation, the bare distinction is not a legitimate basis for disparate legal treatment.
The third and final difference between professional and other corporations relied upon by the court of appeals is that professional corporations "`calculate their net incomes with different goals in mind' when compared to business corporations." Id. at 1038 (quoting Bettius, 839 F.2d at 1013). It is generally assumed that corporations are formed to generate profits, which are dispersed to corporate shareholders in the form of dividends. This money is taxed twice  once to the corporation when it generates the profits and once to the shareholders when they collect their dividends. Id. at 1038-39 (citing Bettius, 839 F.2d at 1013); see also John E. Moye, The Law of Business Organizations 195-97 (4th ed. 1994). The court of appeals reasoned that to avoid this "double taxation," professional corporations like Associates actually try to keep the corporation's profits at a minimum, paying out almost all of their earnings to corporate shareholders as salaries and leaving little to be taxed as corporate profit. Anesthesiologists, 852 P.2d at 1038-39.
The court of appeals then went on to conclude that it is unreasonable to assume that professional corporations earn no profits just because their tax returns show no substantial income or because they pay out no dividends; their profits simply take the form of shareholder salaries. Id. at 1039. The court therefore held that when those salaries are *1240 lost because of another party's breach of contract, the corporation should be compensated for those losses just as they would be for the loss of conventional corporate profits. Id.
We find that the court of appeals' reasoning on this point suffers from the same defects as its other arguments. It may be true that many professional corporations conduct their affairs so as to siphon off corporate profits through shareholder-employees' salaries while many general business corporations distribute profits to shareholders as taxable dividends, but nothing in the court of appeals' opinion warrants attributing this difference to the fact that one type of corporation is run by professionals and the other is not. Rather, it seems more likely that any difference in the flow of profits to shareholders is due not so much to the professional status of the shareholders as to the identity of interests between a corporation's controlling shareholders and its managing employees. This identity of shareholders and employees is not unique to professional corporations. Many closely held business corporations behave just as the court of appeals assumes professional corporations do, paying out most or all of their profits to their principal employee shareholders to avoid double taxation. See Moye, supra, at 196-97.
For the foregoing reasons, we reject the three distinctions relied upon by the court of appeals to justify sanctioning a different treatment of shareholder employees' salaries when professional corporations are concerned.
We next address Associates' argument that unless we follow the rule enunciated by the court of appeals, we will deny Associates an effective remedy for the Hospital's breach of contract. Associates argues that because professional corporations like Associates rarely show a significant profit, deducting employee salaries before determining the corporation's lost profits would prevent professional corporations from ever recovering the real lost benefits of their bargains. Unfortunately, Associates' argument confuses the corporation with its shareholder employees. The Hospital's only contractual duty was to Associates; it had no duty under the contract to provide the salaries of the individual doctors, who were paid by the corporation out of the corporation's gross profits. This action was brought against the Hospital by Associates, a professional corporation. The Hospital contracted with none of the individual doctors, and none of the doctors whose salaries were lost through the Hospital's breach were parties to this action.
We note that the doctors who worked for Associates had various avenues available to them by which they could have protected their interests and permitted the recovery of their lost salaries from the Hospital as lost profits  avenues that required only advance planning. They could have elected to do business as a partnership, for instance, or they could have entered into employment contracts with the corporation they controlled, requiring Associates to pay their salaries without regard to whether it made profits. Either of these measures might have provided a means for the business entity to recover the value of its shareholders' salaries as lost profits. The doctors, however, decided to do business as a professional corporation and to take salaries contingent on income. In so doing, they assumed all the attendant advantages as well as the disadvantages of the corporate form. One of the disadvantages of doing business as a corporation is that losses suffered by individual doctors cannot be recovered by the corporation.[2]
Associates argues that an exception to the conventional rule of damages must be made in its case to avoid an inequitable result, but if any inequity results from this decision, it will have been caused by the employee shareholders' lack of foresight in the structuring of their business and will be relatively small when compared to the injustice of a rule of law that would compensate corporations owned by doctors, lawyers, and other professionals *1241 more generously for losses from breaches of contract than corporations owned by nonprofessional shareholders. While some distinction can be drawn between business and professional corporations, the differences that the court of appeals relies on to justify its unconventional measure of damages in this case are illusory. Certainly Associates is a different kind of organization than a large publicly held corporation, but that does not make it significantly different from the vast number of closely held business corporations for which no recovery of employee or shareholder salaries can be had.
The court of appeals' damages ruling is reversed, and the trial court's damages award for lost profits is reinstated.
HOWE, DURHAM and RUSSON, JJ., concur.
STEWART, Associate Chief Justice, dissenting:
I dissent for the reasons stated in Judge Orme's opinion for the Utah Court of Appeals in Anesthesiologists Associates of Ogden v. St. Benedict's Hospital, 852 P.2d 1030 (Utah Ct.App.), cert. granted, 860 P.2d 943 (Utah 1993). The court of appeals held that remuneration to employee-shareholders of a professional corporation should not be treated as a saved expense but as lost profits for calculating contract damages. Under that holding, remuneration from other sources should be considered as mitigation of damages. Unlike the court of appeals, the majority of this Court rules that the plaintiff did not suffer damages for remuneration to employee-shareholders because that is a saved expense. Consequently, mitigation is not a consideration under the majority's approach. As a practical matter in this case, mitigation would affect only compensation to Dr. Wilcox, who retired, and possibly Dr. Merrill. In other cases, however, the differences in the two approaches may result in great injustice.
The Utah Court of Appeals relied heavily upon a decision of the United States Court of Appeals for the Fourth Circuit, Bettius & Sanderson, P.C. v. National Union Insurance Co., 839 F.2d 1009 (4th Cir.1988). The court below stated that Bettius held
that it would be unfair to force a professional corporation "to use the same formula as a commercial corporation if that formula does not accurately or adequately reflect its profits," and therefore compensation paid to the professional corporation's principals is relevant evidence of actual profit and not merely an expense which will reduce the net profit otherwise recoverable.
852 P.2d at 1038 (quoting Bettius, 839 F.2d at 1014).
The court of appeals laid out some of the significant differences that exist between professional corporations and business corporations as they pertain to the method of earning profits and of taxation. The court of appeals stated:
Because of ... fundamental structural differences, professional corporations "calculate their net incomes with different goals in mind" when compared to business corporations. [Quoting Bettius, 839 F.2d at 1013.] While business corporations pay employees as an expense and generate net profit in order to distribute dividends and create capital, professional corporations primarily pay employee-shareholders based on professional services they provide. Thus, a professional corporation functions essentially as a partnership in which professionals earn their salaries providing professional services while taking advantage of the corporate form in largely incidental ways. A professional corporation distributes virtually all of its income as salaries to its shareholders and thus avoids the double-taxation scenario, where the corporation pays tax on its income and shareholders pay tax on their dividends. Because virtually all income is paid in salaries, a professional "corporation's net income for tax purposes is almost always at or near zero." Id. at 1013. Nonetheless, "it is unrealistic to suggest that the corporation is not earning a profit." Id. Merely because the legislature allowed professionals to participate in corporate advantages, one cannot conclude "that in an action to recover lost profits the professional *1242 corporation must also prove damages in the same manner as any other corporation and end up in almost every case with little or no recovery. Id. at 1013-14.
Anesthesiologists Assoc., 852 P.2d at 1038-39; see also Berrett v. Purser & Edwards, 876 P.2d 367, 371 (Utah 1994) (Stewart, Assoc. C.J., dissenting).
This Court's opinion in effect gives parties who contract with professional corporations the right to breach their contract in a number of cases without being liable for damages.
NOTES
[1] For a more complete recitation of the facts, see Anesthesiologists Associates of Ogden v. St. Benedict's Hospital, 852 P.2d 1030, 1032-35 (Utah Ct.App.), cert. granted, 860 P.2d 943 (Utah 1993).
[2] We note that because the corporation is a legal entity independent of the doctors, even if we were to rule in Associates' favor we could not be assured that the doctors would ever receive their expected salaries. If the value of the doctors' salaries were awarded to Associates, the court would have no way of guaranteeing that the money would actually be used to compensate those physicians who may have been injured by the Hospital's breach.