■ GEORGE REBH, Respondent, and FRED POTOK et al., Appellants, v LAKE GEORGE VENTURES, INC., Appellant-Respondent, et al., Defendants. [660 NYS2d 901] —Yesawich Jr., J. Appeals (1) from an order and an amended order of the Supreme Court (Teresi, J.), entered September 3, 1996 in Albany County, upon a decision of the court, *inter alia*, in favor of plaintiff George Rebh against defendant Lake George Ventures, Inc., and (2) from the judgment entered thereon.

This action has its genesis in a written contract, by which defendants Argonox Realty Inc. and Lake George Ventures, Inc. (hereinafter collectively referred to as defendants) agreed to employ plaintiffs as a "Sales Team" to market and sell townhouses at the Top O' the World development in Warren County. The agreement provided that plaintiffs George Rebh and Fred Potok were each to receive a weekly salary of $500, plus commissions and bonuses based on the number of units sold, in exchange for their efforts. Plaintiff Norman Allen, who had no ongoing duties under the contract, was to receive a portion of the sales commissions and bonuses only, as consideration for his role in assembling the team and bringing the parties together. The contract would expire automatically upon the sale of the last unit in "Phase II" of the project, or could be terminated by Lake George prior to that time under certain conditions.

It having been previously determined that defendants breached the agreement (*see*, 223 AD2d 986), a nonjury trial was held on the issue of damages. Rebh, on his own behalf and as Potok's assignee, was awarded $292,000 plus interest, representing the basic salary owed to Rebh and Potok for the period from October 13, 1988 (the date of breach) to July 30, 1994 (when the project was the subject of a foreclosure) (hereinafter the salary award), as well as $33,306.43, plus interest, for commissions he earned before leaving defendants' employ. Lake George challenges the salary award, contending, *inter alia*, that Supreme Court erred in rejecting its argument that the contract should be deemed terminated as of September 7, 1989 (the date this suit was commenced) or on one of two earlier dates, and in finding that Rebh and Potok had made reasonable efforts to mitigate their damages after the breach.

Potok (on his own behalf and as Rebh's assignee) and Allen unsuccessfully attempted to obtain compensation for the commissions they maintain the team would have earned had their employment continued. In this respect, Supreme Court found opinions of plaintiffs' expert as to the level of sales plaintiffs would have generated had they not been discharged "speculative, conclusory and [ ] incredible as a matter of law", and thus insufficient to establish the amount of commissions lost as a result of the breach. Potok and Allen contest these findings.

This Court previously ruled that the only means by which defendants could terminate the contract, prior to the sale of all of the Phase II units, was to first afford plaintiffs a 30-day opportunity to cure their allegedly substandard performance (*see*, 223 AD2d 986). Inasmuch as no such opportunity was fur-

nished—indeed, after October 13, 1988, Potok was apparently barred from the premises, making it impossible to remedy his purported failure to participate meaningfully in the sales effort—the assertion that defendants' contractual obligations were extinguished, by the mere passage of time, by Rebh's actual departure from the project after fruitless attempts to renegotiate the terms of his continued employment, or by the commencement of this action, is unpersuasive.

Equally unconvincing is Lake George's contention that Supreme Court erred in not reducing the salary award by the amount Rebh and Potok actually earned, from other sources, after their dismissal. The damages payable for breach of an employment contract are measured, prima facie, by the wages that would have been paid during the remainder of the contract term (*see, Cornell v T. V. Dev. Corp.*, 17 NY2d 69, 74). As plaintiffs indisputably established this amount, the burden then shifted to defendants to demonstrate that (because the breach relieved plaintiffs of their contractual duties) they " ' "earned, will earn, or could with reasonable diligence earn" ' " additional income during the unexpired term of the agreement (*Woodford v Benedict Community Health Ctr.*, 188 AD2d 863, 864, quoting *Hollwedel v Duffy-Mott Co.*, 263 NY 95, 101, quoting *McClelland v Climax Hosiery Mills*, 252 NY 347, 358), and therefore that the award should be reduced by those sums (*see, Matter of Northeast Cent. School Dist. v Webutuck Teachers Assn.*, 121 AD2d 544, 545, *lv denied* 69 NY2d 602).

Although defendants elicited proof that Potok earned approximately $64,000 from his own real estate brokerage in 1989 and 1990, as well as an undisclosed sum from "rehabing" old houses, and that Rebh had some earnings from consulting and the operation of a mortgage prepayment business, there was no evidence that plaintiffs could not have pursued these activities while also fulfilling their contractual obligations (*see, Donald Rubin, Inc. v Schwartz*, 191 AD2d 171, 171-172). Indeed, the only testimony in this regard was Rebh's statement that he could have developed his mortgage business while at the same time meeting the demands placed on him at Top O' the World. Moreover, defendants presented no evidence controverting plaintiffs' claims that their job search efforts—which included sending out resumes, seeking out known contacts and applying for advertised positions—were reasonably diligent, under the circumstances. In short, Supreme Court rightly concluded that defendants did not meet their burden of proving that plaintiffs did, or could have, mitigated their damages by obtaining substitute employment.

Nor is there any basis for questioning Supreme Court's finding that plaintiffs' expert's predictions, with regard to the sales that would have been achieved had the sales team not been discharged, were inordinately speculative. Given the deficiencies in the expert's proof, as found and noted by Supreme Court, the court cannot be faulted for rejecting that testimony as too speculative to establish, with reasonable certainty (see, e.g., *Ashland Mgt. v Janien*, 82 NY2d 395, 403; *Schneider v State of New York*, 38 AD2d 628), that more sales would have been consummated had the sales team not been fired.

Nevertheless, with respect to actual sales that were closed after plaintiffs' premature discharge, plaintiffs are entitled to the commissions they would have earned thereon at the rates recited in the contract. It appears that 14 units[1] were sold between the date of termination and the foreclosure, for a total gross selling price of $3,268,427. Of these, 10 units, totaling $2,273,257, were apparently sold by on-site salespeople,[2] entitling the sales team to a commission of 4.75%, or $107,979.70. Rebh was already awarded 33% of the team's commission on unit P-52, however, so that amount ($4,059.83) should not be awarded again; this yields an award of $35,993.23 each to Potok and Allen, and an additional $31,933.40 to Potok as Rebh's assignee.

Rebh was directly involved in two of the sales[3] and has received his commission thereon; the other sales team members should each receive 1.5% of the $543,000 selling price, or $8,145. As for the remaining two sales, amounting to $452,170,[4] the record either suggests the participation of an outside broker or contains no indication of who brought about the transaction; plaintiffs have thus only demonstrated their entitlement to a commission of 2.75%, or $12,434.68 ($4,144.89 each), on these sales. Summing these amounts, we conclude that Allen should receive $48,283.12 and Potok $84,361.41 (representing $48,283.12 due him, along with $36,078.29 earned by Rebh), plus interest on each commission from the date of closing.

The parties' remaining allegations of error have been considered and found meritless.

Mikoll, J. P., Mercure, Crew III and Peters, JJ., concur. Ordered that the order, amended order and judgment are modified, on the law and the facts, without costs, by reversing so

---

1. Units O-49, O-50, P-51, O-47, O-48, T-64, P-52, S-63, Q-55, R-59, R-58, P-54, Q-56 and P-53.
2. Units O-47, O-48, T-64, P-52, S-63, R-59, R-58, P-54, Q-56 and P-53.
3. Units O-50 and P-51.
4. Those of units O-49 and Q-55.

much thereof as dismissed the claims of plaintiffs Fred Potok and Norman Allen; judgment awarded to plaintiff Norman Allen in the amount of $48,283.12 and plaintiff Fred Potok in the amount of $84,361.41, plus interest on each commission from the date of closing; and, as so modified, affirmed.