■ GEORGE REBH et al., Respondents, v ROTTERDAM VENTURES, INC., Doing Business as GALESI GROUP, Appellant. [675 NYS2d 234] —Yesawich Jr., J. Appeals from two orders of the Supreme Court (Teresi, J.), entered July 23, 1997 and January 16, 1998 in Albany County, which denied defendant's motions for summary judgment dismissing the complaint and the amended complaint.

Plaintiffs, holders of judgments totaling over $800,000 against Lake George Ventures, Inc. (hereinafter LGV; see, Rebh v Lake George Ventures, 241 AD2d 801; Rebh v Lake George Ventures, 223 AD2d 986; Rebh v Lake George Ventures, 218 AD2d 829), a corporation that no longer has any significant assets from which to satisfy those judgments, seek to pierce the corporate veil and hold defendant, LGV's parent company, liable for its subsidiary's debts. In their second cause of action, plaintiffs seek to set aside, as fraudulent, certain transactions entered into between LGV and defendant, which plaintiffs allege were part of a deliberate scheme of corporate asset shifting, intended to place LGV's assets out of their reach. Defendant moved for summary judgment dismissing the original complaint, brought by plaintiff George Rebh alone, and later sought dismissal of an amended complaint, wherein Fred Po-

tok and Norman Allen were added as plaintiffs. Both of these motions having been denied, defendant appeals.

Supreme Court properly rejected defendant's assertion that the present action is barred by collateral estoppel or res judicata. Although named as a defendant in plaintiffs' initial lawsuit charging, *inter alia*, breach of an employment contract and a lease, defendant was let out of that action because it was not a signatory to either of the subject documents (*see, Rebh v Lake George Ventures*, 218 AD2d 829, *supra*; *Rebh v Lake George Ventures*, 233 AD2d 986, *supra*). During the course of that litigation, the issue of piercing the corporate veil, though briefed, was neither pleaded in the complaint nor directly addressed by any court, and the fraudulent conveyance claim was never raised. As neither of these issues was "actually determined in the prior proceeding" (*Matter of Halyalkar v Board of Regents*, 72 NY2d 261, 268), the doctrine of collateral estoppel does not prevent their consideration at this juncture (*see, Kaufman v Eli Lilly & Co.*, 65 NY2d 449, 456-457; *Koether v Generalow*, 213 AD2d 379, 380). And, inasmuch as the claims presently before us have their origins in different factual occurrences (the earlier suit involved proof of the circumstances surrounding the execution, performance and breach of the employment contract and lease, whereas this case centers on wholly unrelated transactions between LGV and defendant), seek different kinds of relief and require the application of a different body of law, res judicata does not mandate their dismissal (*see, RENP Corp. v Embassy Holding Co.*, 229 AD2d 381, 382).

Nor are we persuaded that, as defendant contends, plaintiffs have failed to rebut its prima facie showing that their causes of action are meritless as a matter of law. The corporate veil may be pierced when a shareholder has exercised complete domination over the affairs of a corporation, with respect to the transaction(s) being assailed, and used that control to commit a fraud or wrong against a third party, to the latter's detriment (*see, Matter of Morris v New York State Dept. of Taxation & Fin.*, 82 NY2d 135, 141). Here, the record indicates, *inter alia*, that LGV and defendant shared officers and directors, as well as a common office space and employees; that defendant guaranteed most, if not all, of LGV's debts, including the loan used to purchase its primary asset (the real estate upon which the "Top O' the World" resort was constructed), and loaned LGV money to cover its expenses; that defendant's name was used in connection with LGV's development project; and that defendant transferred assets, including an uncollectible prom-

issory note, between itself and its various affiliates, for the purpose of decreasing its tax liability. Additionally, there is evidence suggesting that LGV may have been inadequately capitalized.

These factors, considered in conjunction with the timing and other circumstances surrounding defendant's purchase and later foreclosure of LGV's mortgage—which left the latter judgment proof, while enabling defendant to transfer LGV's assets to another of defendant's subsidiaries, which apparently has carried on in LGV's shoes—raise a question of fact as to whether defendant completely controlled and dominated LGV, in furtherance of "a scheme to denude the subsidiary of its assets in order to render it unable to honor its obligations resulting in a loss to plaintiff[s]" (*Chase Manhattan Bank v 264 Water St. Assocs.*, 174 AD2d 504, 505; *see, Lally v Catskill Airways*, 198 AD2d 643, 645; *cf., Anderson St. Realty Corp. v RHMB New Rochelle Leasing Corp.*, 243 AD2d 595, 595-596).

Factual questions also exist with respect to plaintiff's allegations that LGV fraudulently transferred, within the meaning of the Debtor and Creditor Law, essentially all of its assets to defendant for less than fair consideration (*see*, Debtor and Creditor Law §§ 273, 273-a, 274, 275), or with an intent to "hinder, delay, or defraud" LGV's creditors (Debtor and Creditor Law § 276). The timing and circumstances of defendant's foreclosure and related transactions (including the transfer of the Top O' the World water company stock), its close relationship with LGV and knowledge of the pending claims against that corporation, and its retention of control over the latter's property by transferring it to another wholly owned subsidiary, taken together, could support an inference that the subject transfers were made with an intent to defraud plaintiffs (*see, Pen Pak Corp. v LaSalle Natl. Bank*, 240 AD2d 384, 388), or that they constituted the kind of "intercorporate shuffling of assets and debts for the purpose of rendering uncollectable any money judgment against [LGV]" (*Matter of Superior Leather Co. v Lipman Split Co.*, 116 AD2d 796, 797) that signals a lack of the requisite "good faith" (Debtor and Creditor Law § 272; *Furlong v Storch*, 132 AD2d 866, 868; *Southern Indus. v Jeremias*, 66 AD2d 178, 183).*

As for defendant's argument that the amended complaint

---

* It bears noting, however, that the right to collect the golf course rent would have automatically passed to defendant, along with title to the premises, at the time of the foreclosure sale (*see*, Real Property Law § 223; *Metropolitan Life Ins. Co. v Childs Co.*, 230 NY 285, 289-290; *Clemente Bros. v Peterson-Ashton Fuels*, 29 AD2d 908, 910, *lv denied* 24 NY2d 737); hence, if

should have been dismissed because plaintiffs neglected to obtain leave to file it (*see*, CPLR 3025), it suffices to note that defendant, having accepted the pleading and answered it, has waived any objection it may have had in this regard (*see*, *Chiulli v Coyne*, 210 AD2d 450).

Mikoll, J. P., Mercure, Crew III and Peters, JJ., concur. Ordered that the orders are affirmed, with costs.

---

the foreclosure is upheld, plaintiffs' attempt to challenge the "transfer" of the rentals separately from that of the real property itself is unavailing.