■ George Rebh et al., Appellants, v Rotterdam Ventures, Inc., Doing Business as Galesi Group, Respondent. [716 NYS2d 457] —Mercure, J. P. Appeal from a judgment of the Supreme Court (Hughes, J.), entered October 7, 1999 in Albany County, upon a decision of the court in favor of defendant.

In this action, plaintiffs seek to recover the balance due under judgments they obtained against Lake George Ventures, Inc. (hereinafter LGV), a subsidiary of defendant that was formed to develop the Top 'O the World resort community

overlooking Lake George, by piercing the corporate veil or upon the theory that LGV's transfer of certain assets constituted fraudulent transfers under the Debtor and Creditor Law. We previously upheld Supreme Court's denial of defendant's motion for summary judgment dismissing the complaint (252 AD2d 609) and the matter proceeded to a nonjury trial. Supreme Court thereafter rendered judgment in favor of defendant upon its findings that, although defendant dominated LGV, it did not use that domination to commit a fraud or wrong on plaintiffs. Plaintiffs appeal.

The trial evidence showed that LGV was incorporated in November 1985. Defendant's principal, Francesco Galesi, initially held 90% of the stock and all of the stock was ultimately transferred to defendant. Initial project funding was provided through a $2.5 million loan from Chemical Bank, secured by defendant's guarantee of repayment of the loan and completion of the project. The loan proceeds were utilized to purchase the real property upon which the project was to be established. Chemical Bank thereafter loaned an additional $3.5 million to LGV, again guaranteed by defendant, and the two loans were consolidated into a first mortgage loan of $6 million. In 1989, the loan was modified by splitting the loan into a $1.9 term note on which defendant was primary obligor and a $4.1 million project note on which LGV was the obligor and defendant was a guarantor.

Due to LGV's lack of success in marketing the project's townhouses and in order to protect itself from the exercise of Chemical Bank's enforcement remedies, defendant was forced to make monthly installments of principal and interest on LGV's behalf. Ultimately, defendant purchased the project note from Chemical Bank for $3.1 million, paid the $1.5 million balance on the term note and took an assignment of the first mortgage on the project's realty. After LGV failed to make payments on the indebtedness over the course of the succeeding two years, defendant brought an action to foreclose its mortgage. Ultimately, defendant obtained a judgment of foreclosure and sale in the amount of $6,070,246.50. Defendant bid in the property at the foreclosure sale and thereafter obtained a deficiency judgment in the amount of $3,070,246.50.

Following the foreclosure sale, LGV transferred to defendant all of the shares of Top of the World Water Company, a separate entity that had been organized to construct and operate the water supply and delivery system for the project, in exchange for a $950,000 reduction in the deficiency judgment. The water company stock had been pledged as additional secu-

rity for the loan indebtedness to Chemical Bank and, following the assignment of the mortgage, to defendant. Finally, defendant conveyed the project sports complex to the Top of the World Homeowners Association in premature fulfillment of LGV's contractual commitment to make such conveyance upon the sale of the 128th townhouse unit.

Based on the foregoing, and accepting that defendant exercised complete domination and control over LGV, we are at a loss as to how plaintiffs perceive themselves to have been inequitably affected by defendant's foreclosure action against LGV, by LGV's divestiture of the water company stock or the sports complex property, or by defendant's transfer to LGV of a third party's uncollectible note, accomplished solely for tax purposes. It is undisputed that LGV was, and for some period of time had been, unable to meet its obligations and, at the time of the foreclosure sale, liens against its property exceeded the value of its assets by several million dollars, even including the water company and sports complex at the values plaintiffs would assign to them. In fact, even if plaintiffs' analysis were utilized to eliminate the entire $3 million deficiency judgment, the fact remains that subordinate mortgages totaling nearly an additional $2 million have priority over plaintiffs' judgments.

As properly concluded by Supreme Court, absent a finding of any inequitable consequence to plaintiffs, both causes of action pleaded in the amended complaint must fail. Fundamentally, a party seeking to pierce the corporate veil must show complete domination and control of the subsidiary by the parent and also that such domination was used to commit a fraud or wrong against the plaintiff that resulted in the plaintiff's injury (252 AD2d 609, 610, *supra; see, Matter of Morris v New York State Dept. of Taxation & Fin.*, 82 NY2d 135, 141). Notably, "[e]vidence of domination alone does not suffice without an additional showing that it led to inequity, fraud or malfeasance" (*TNS Holdings v MKI Sec. Corp.*, 92 NY2d 335, 339). As for the second cause of action, the evidence established that the challenged transfers were made for fair consideration or to satisfy an antecedent debt and also that the net effect of the transfers was not to prefer any creditor over plaintiffs (*see,* Debtor and Creditor Law §§ 272, 273, 273-a). Under the circumstances, we perceive no error in Supreme Court's determination.

In reaching that conclusion, we specifically reject a number of plaintiffs' assertions, including the entirely erroneous claims that our determination on the prior appeal (252 AD2d 609, *supra*) set forth a "roadmap" for the proof required at trial and

mandated a verdict in favor of plaintiffs upon their production of evidence that supported the decision's "listed facts." To the contrary, our decision was predicated upon the existence of such evidence, absent which we would have granted summary judgment in favor of defendant. We are equally unpersuaded by plaintiffs' continued reliance upon defendant's December 1991 unilateral conversion of its intercompany loans with LGV from debt to equity, which constituted nothing more than a "bookkeeping transaction" and had no apparent effect on LGV's obligations to defendant or defendant's right to foreclose on its mortgage. Plaintiffs' additional contentions have been considered and found to be unavailing.

Crew III, Mugglin, Rose and Lahtinen, JJ., concur. Ordered that the judgment is affirmed, with costs.