Federico v Brancato (2020 NY Slip Op 07036)





Federico v Brancato


2020 NY Slip Op 07036


Decided on November 25, 2020


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on November 25, 2020
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

MARK C. DILLON, J.P.
CHERYL E. CHAMBERS
ROBERT J. MILLER
VALERIE BRATHWAITE NELSON, JJ.


2018-09929 
2018-12276
 (Index No. 3133/12)

[*1]Theresa Federico, etc., appellant-respondent,
v
Anthony Brancato, etc., respondent-appellant, et al., defendant.


Lynn Gartner Dunne, LLP, Mineola, NY (Robert P. Lynn, Jr., and Kenneth L. Gartner of counsel), for appellant-respondent.
MargolinBesunder LLP, Islandia, NY (Harvey B. Besunder, Zachary D. Dubey, and Jeffrey D. Powell of counsel), for respondent-appellant.



DECISION & ORDER
In an action, inter alia, to recover damages for breach of contract, (1) the plaintiff appeals, and the defendant Anthony Brancato, individually and as executor of the estate of Roseann Brancato,, cross-appeals, from a judgment of the Supreme Court, Suffolk County (Elizabeth H. Emerson, J.), entered July 13, 2018, and (2) the plaintiff appeals from an order of the same court dated July 10, 2018. The judgment, insofar as appealed from, upon a decision of the same court dated July 13, 2017, awarded damages in favor of the plaintiff Theresa Federico individually and against that defendant in the principal sum of only $302,231. The judgment, insofar as cross-appealed from, upon the decision, awarded damages in favor of the plaintiff Theresa Federico individually and against that defendant in the principal sum of $302,231. The order dated July 10, 2018, granted the motion of the defendant Anthony Brancato, individually and as executor of the estate of Roseann Bracato, pursuant to Business Corporation Law § 724, to be indemnified by Challenge Graphics Services, Inc., for the damages, costs and expenses, and attorneys' fees incurred in connection with this action.
ORDERED that the judgment is modified, on the law and the facts, by adding an award to the plaintiff for the amount of payments Challenge Graphics Services, Inc., should have made to her to reimburse her for the income taxes attributable to her compensation from Challenge Graphics Services, Inc.; as so modified, the judgment is affirmed insofar as appealed and cross-appealed from, without costs or disbursements, and the matter is remitted to the Supreme Court, Suffolk County, for the calculation of the amount of these taxes in accordance herewith, and for the entry of an amended judgment thereafter; and it is further,
ORDERED that the order is affirmed, without costs or disbursements.
Challenge Graphics Services, Inc. (hereinafter CGS), is a commercial printing business formed by the defendants Anthony Brancato and Roseann Brancato in 1976. On December 31, 2011, as part of their estate planning, Anthony and Roseann entered into a shareholders' agreement regarding CGS with their son, the defendant Joseph Brancato and their daughter, the [*2]plaintiff Theresa Federico. The shareholders' agreement made all four individuals shareholders of the CGS corporation and designated each of them as officers of the corporation until death or resignation. Separately, the agreement provided that the corporation shall continue the employment of each of the shareholders "in their executive capacity" so long as the shareholder continued to duly perform "their executive duties" at a salary as fixed by the board. Theresa worked as CGS's accountant, and, in effect, its chief financial officer, with a compensation package that included, among other things, an annual salary of $100,100, and payments to cover the income taxes on her compensation from CGS.
At some point, the relationship between Theresa and Joseph became strained and, in 2010, Anthony and Roseann, concerned for the future of the family business, attempted to persuade Theresa to sell her shares in CGS to Joseph. After Theresa refused and communications with her further deteriorated, Anthony and Roseann, among other things, reduced Theresa's annual salary to $10,000, withheld payments with which to pay her taxes, restricted her authority within the corporation, and eventually terminated her employment. They also attempted to convene a meeting of the shareholders, with the intention of terminating the shareholders' agreement, but they were prevented from doing so by a temporary restraining order.
Theresa commenced this action individually and as a shareholder, suing on behalf of herself and CGS, among other things, to recover damages for breach of the shareholders' agreement. Following a nonjury trial on the issue of liability, the Supreme Court found that Anthony and Roseann had breached the shareholders' agreement by terminating Theresa's employment and by reducing her involvement in the corporation to nothing. In an interlocutory judgment dated August 6, 2014, the Supreme Court, inter alia, dismissed the other causes of action and denied all injunctive relief sought by Theresa, and directed that the sum for the breach of the shareholders' agreement would be determined at trial. The order was affirmed on appeal (see Federico v Brancato, 144 AD3d 965).
Once the temporary restraining order was lifted by virtue of the Supreme Court's denial of all injunctive relief, on September 8, 2014, a special shareholders meeting was held. At the meeting, Anthony, Joseph, and Roseann, individually and on behalf of CGS, voted to terminate the shareholders' agreement, with Theresa voting against termination.
As to damages on the breach of contract cause of action, the parties agreed to submit expert reports to the Supreme Court rather than proceed to trial. In a decision dated July 13, 2017, the court determined that the appropriate period upon which to calculate damages was from June 4, 2012, when Theresa's salary was reduced, through September 8, 2014, when the shareholders' agreement was terminated. In a judgment entered July 13, 2018, the court awarded Theresa, individually, damages in the principal sum of $302,231. Theresa appeals, and Anthony, on behalf of himself and as executor of the estate of Roseann, who died during the pendency of these proceedings, cross-appeals.
Following the Supreme Court's decision on damages, Anthony moved, on behalf of himself and as executor of the estate of Roseann, pursuant to Business Corporation Law § 724 to be indemnified by CGS for the damages, costs and expenses, and attorneys' fees incurred in connection with this action. Theresa opposed the motion. In an order dated July 10, 2018, the Supreme Court granted the motion. Theresa appeals from that order.
Contrary to Theresa's contentions, the shareholders' agreement was effectively terminated on September 8, 2014. The shareholders' agreement provided that it shall terminate upon, among other possibilities, voluntary agreement of two-thirds of the parties thereto. CGI was made a party to the agreement, and therefore, its agreement was needed to obtain two-thirds of the five parties. Roseann was authorized to vote on behalf of CGS to terminate the agreement, and neither Roseann nor Anthony was precluded by self-interest from voting to have Roseann cast CGS's vote or to vote to terminate the shareholders' agreement. "Directors are self-interested in a challenged transaction where they will receive a direct financial benefit from the transaction which is different from the benefit to shareholders generally" (Marx v Akers, 88 NY2d 189, 202). Here, [*3]neither Anthony nor Roseann would receive a direct financial benefit from terminating the shareholders' agreement that was different from the benefit to shareholders generally. In addition, if corporate directors have not breached their fiduciary obligation to the corporation, "the exercise of [their powers] for the common and general interests of the corporation may not be questioned, although the results show that what they did was unwise or inexpedient" (Matter of Levandusky v One Fifth Ave. Apt. Corp., 75 NY2d 530, 538 [internal quotation marks omitted]). Here, the record supports the Supreme Court's determination that Anthony and Roseann were motivated by a legitimate corporate purpose in their efforts to remove Theresa from CGS, as they genuinely believed that her removal was necessary for the company to survive, and they acted in good faith and in the furtherance of the corporate purpose.
Turning to the award of damages, the damages payable for breach of an employment agreement is "the wage that would be payable during the remainder of the term reduced by the income which the discharged employee has earned, will earn, or could with reasonable diligence earn during the unexpired term" (Hollwedel v Duffy-Mott Co., 263 NY 95, 101 [internal quotation marks omitted]; see McClelland v Climax Hosiery Mills, 252 NY 347, 358; Tendler v Bais Knesses of New Hempstead, Inc., 112 AD3d 911, 911-912). Here, while Anthony and Roseann were liable for certain damages for breaching the shareholders' agreement, they did not forfeit the right to terminate the shareholders' agreement (see Tendler v Bais Knesses of New Hempstead, Inc., 112 AD3d at 911). Thus, contrary to Theresa's contention, she was not entitled to recover damages in the amount equal to the compensation that she would have earned during her expected lifetime (see id.). Instead, as the Supreme Court found, Theresa was only entitled to recover for damages she sustained between the date when her salary was reduced and the date that the shareholders' agreement was terminated (see id. at 912). Contrary to Anthony's contention, he failed to establish that Theresa was required to mitigate her damages and that her recovery of damages should have been diminished thereby (see Eskenazi v Mackoul, 72 AD3d 1012, 1014).
We agree with Theresa, however, that the Supreme Court erred in declining to include in her award of damages the payments to her to cover the income taxes due on her compensation from CGS, as such reimbursements had been a part of her compensation package. Included in the record are the calculations, made by Theresa's expert, of what these taxes amounted to in the period June 4, 2012 through September 8, 2014. However, these figures are illegible. Therefore, we remit the matter to the Supreme Court, Suffolk County, for the calculation of the amount of these taxes.
We agree with the Supreme Court's determination granting Anthony's motion pursuant to Business Corporation Law § 724 to be indemnified by CGS for the damages, costs and expenses, and attorneys' fees incurred in connection with this action. Article 7 of the Business Corporation Law sets forth the statutory framework for a corporation to provide indemnification for expenses incurred in litigation to officers and directors (see Business Corporation Law § 721 et seq.). Where a corporation does not provide for indemnification, indemnification may be obtained by court order (see Business Corporation Law § 724[a], [c]). Pursuant to Business Corporation Law § 724(a), a court may award indemnification to the extent authorized by Business Corporation Law §§ 722 and 723(a). Business Corporation Law § 722 allows indemnification of a director or officer in certain actions where the director or officer "acted, in good faith, for a purpose which he [or she] reasonably believed to be in . . . the best interests of the corporation" (Business Corporation Law § 722[a], [c]; see Biondi v Beekman Hill House Apt. Corp., 94 NY2d 659, 666; Tulino v Tulino, 148 AD3d 755, 757). Here, the record establishes that Anthony and Roseann acted in good faith in defending this action and reasonably believed that they were acting in the best interests of the corporation, and, therefore, indemnification was warranted.
The parties' remaining contentions are either without merit or not properly before this Court.
DILLON, J.P., CHAMBERS, MILLER and BRATHWAITE NELSON, JJ., concur.
ENTER:
Aprilanne Agostino
Clerk of the Court